# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

SHERRY ANN RICHARDSON,   )
                          )
       Plaintiff,   )
                          )
v.                        )   Case No.   CIV-12-390-SPS
                          )
CAROLYN W. COLVIN,        )
Acting Commissioner of the Social )
Security Administration,[1]  )
                          )
       Defendant.  )

## OPINION AND ORDER

The claimant Sherry Ann Richardson requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the Commissioner's decision is hereby REVERSED and the case REMANDED to the ALJ for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Colvin is substituted for Michael J. Astrue as the Defendant in this action.

such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799,

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on April 24, 1963, and was forty-eight years old at the administrative hearing (Tr. 29-30). She attended one year of college and earned her license as an LPN, and has worked as a teacher's aide (Tr. 20, 150). She alleges that she has been unable to work since March 11, 2010, due to rheumatoid arthritis, diabetes, high blood pressure, fibromyalgia, and Sjogren's disease (Tr. 149-150).

## Procedural History

On January 12, 2010, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. Her application was denied. ALJ Trace Baldwin held an administrative hearing and determined the claimant was not disabled in a written opinion dated July 6, 2011 (Tr. 12-21). The Appeals Council denied review, so the ALJ's opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform nearly the full range of light work as defined in 20 C.F.R. § 404.1567(b), *i. e.*, she could lift/carry ten pounds

frequently and twenty pounds occasionally, stand/walk two hours in an eight-hour workday, and sit six hours in an eight-hour workday, but that she must have the option to sit/stand at will. The ALJ further found that the claimant could push/pull without limits, including the operation of hand and foot controls, and had no postural, manipulative, visual, communicative, or environmental limitations (Tr. 15). The ALJ concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was other work that she could perform, *i. e.*, cashier II (Tr. 21).

### Review

The claimant's sole contention of error on appeal is that the ALJ failed to properly evaluate the opinion of his treating physician Dr. Thomas Leahey. The Court agrees, and the decision of the Commissioner must therefore be reversed.

The ALJ determined that the claimant's severe impairments consisted of diabetes, degenerative disc disease, chronic low back pain (chronic pain syndrome), fibromyalgia with inflammatory polyarthritis, and osteoarthritis, as well as the nonsevere impairments of chest pain, hypertension, obstructive sleep apnea, COPD, Sjogren's syndrome and obesity (Tr. 14-15). The relevant medical evidence reveals that Dr. Leahey treated the claimant beginning in February 2009. He ordered x-rays of the claimant's hands, which showed normal joint spaces, with no other changes and without fractures. He diagnosed her with joint pain involving multiple sites and osteoarthritis (Tr. 218-219). His examination revealed 5/5 muscle strength, and normal muscle tone and range of motion. He diagnosed her with osteoarthritis in multiple sites but especially bilateral knees and

spine, thoracic kyphosis, inflammatory polyarthritis, diabetes mellitus type II, and pain and swelling in multiple joints (Tr. 366). He continued to treat her into September 2010, and his notes reflect medication management as well as continued complaints of pain and swelling, often in the hands and wrists (Tr. 368-383, 493-497). In April 2010, Dr. Leahey responded to two questions posed by the claimant's attorney, answering that the claimant could oppose her thumb to her fingertips with difficulty, but that she could not do fine and gross manipulations with her hands (Tr. 501-502). Additionally, Dr. Geo-Phillips Chacko conducted a consultative examination on June 26, 2010 (Tr. 422-431). He, too, found she had normal grip strength, but that she could perform both gross and fine tactile manipulation, and had adequate finger to thumb opposition (Tr. 424). He further noted that the claimant had 18/18 tender points consistent with fibromyalgia, and assessed her, as relevant, with fibromyalgia with inflammatory polyarthritis, osteoarthritis of multiple joints, diabetes type two, hypertension (Tr. 424, 431).

The medical opinions of a treating physician such as Dr. Leahey are entitled to controlling weight if "well-supported by medically acceptable clinical and laboratory diagnostic techniques [and] consistent with other substantial evidence in the record." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). When a treating physician's opinion is not entitled to controlling weight, the ALJ must determine the proper weight to give it by considering the following factors: (i) the length of the treatment and frequency of examinations, (ii) the nature and extent of the treatment relationship, (iii) the degree of relevant evidence

supporting the opinion, (iv) the consistency of the opinion with the record as a whole, (v) whether the physician is a specialist, and (vi) other factors supporting or contradicting the opinion. *Watkins*, 350 F.3d at 1300-01 [quotation marks omitted], *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001). If the ALJ decides to reject a treating physician's opinion entirely, he is required to "give specific, legitimate reasons for doing so." *Id.* at 1301. In sum, it must be "clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 1300, *citing* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (July 2, 1996).

In his written opinion, the ALJ summarized the claimant's testimony and medical records. He acknowledged the MRI testing revealing a central disc protrusion at C6-7, a right paracentral disc protrusion at the C5-6, and other evidence of degenerative disease and spurring, and disc dessication (Tr. 407-411), but found that other evidence indicated the claimant could perform work (Tr. 17). In evaluating Dr. Leahey's opinion, the ALJ noted that bilateral x-rays that revealed normal joint spaces of the hand and wrist, as well as 5/5 muscle strength normal muscle tone, and full range of motion. The ALJ repeated several times the claimant's reports to Dr. Leahey that heat, ice, and medication had improved her joint pain, as well as advice to perform home therapy and strengthening exercises. The ALJ concluded that Dr. Leahey's statements that the claimant could opposed her thumb to fingertips with difficulty and could not perform gross and fine manipulation with her hands were not supported by the normal bilateral x-rays or 5/5 grip strength, and also contradicted Dr. Chacko's findings two months later that she could

oppose her finger and thumbs adequately and could perform gross and fine manipulation. The ALJ further noted that Dr. Leahey had not ordered testing such as nerve conduction, and assigned his opinion little weight. The ALJ also noted Dr. Chacko's findings as to the claimant's grip strength and manipulation findings, but did not mention his finding that the claimant had 18/18 fibromyalgia tender points (Tr. 18, 424, 431).

The ALJ's refusal to assign controlling weight to Dr. Leahey's opinion based on the "lack of objective findings" would be a legitimate reason except that he ignored the nature of her pain-producing severe impairments to do so. Symptoms of fibromyalgia alone are "entirely subjective." *See*, *e. g.*, *Moore v. Barnhart*, 114 Fed. Appx. 983, 991-92 (10th Cir. 2004), *citing Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996) ("[Fibromyalgia's] cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia."); *Green-Younger v. Barnhart*, 335 F.3d 99, 108 (2d Cir. 2003) (finding the ALJ erred in "effectively requir[ing] 'objective' evidence for a disease that eludes such measurement."); *Benecke v. Barnhart*, 379 F.3d 587, 590 (9th Cir. 2004) (noting fibromyalgia is "poorly-understood within much of the medical community [and] . . . is diagnosed entirely on the basis of patients' reports of pain and other symptoms."). *See also Gilbert v. Astrue*, 231 Fed. Appx. 778, 784 (10th Cir. 2007) ("[T]he lack of objective test findings noted by the ALJ is not determinative of the severity of [the claimant's] fibromyalgia.") [citation omitted]. Thus, the lack of significant restriction in the claimant's grip strength, for

example, does not necessarily mean that her fibromyalgia and the pain it causes her are not disabling and that Dr. Leahey's opinion should be discounted for this reason alone.

"Pain, even if not disabling, is still a nonexertional impairment to be taken into consideration, unless there is substantial evidence for the ALJ to find that the claimant's pain is insignificant." *Thompson v. Sullivan*, 987 F.2d 1482, 1490-91 (10th Cir. 1993), *citing Ray v. Bowen*, 865 F.2d 222, 225 (10th Cir. 1989) and *Gossett v. Bowen*, 862 F.2d 802, 807-08 (10th Cir. 1988). The ALJ's finding at step two that the claimant's fibromyalgia was a severe impairment "makes it impossible to conclude at step four that her pain was insignificant." *Baker v. Barnhart*, 84 Fed. Appx. 10, 13 (10th Cir. 2003); *see also Duncan*, 1998 WL 544353, at *2 ("We note the inconsistency of finding that a pain syndrome is severe at step two and insignificant at step five."). Thus, the ALJ was required to evaluate the claimant's pain and determine the degree to which it impaired her ability to perform any work-related activities. The factors to consider include: "(1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a 'loose nexus' between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling." *Musgrave v. Sullivan*, 966 F.2d 1371, 1375-76 (10th Cir. 1992), *citing Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987). Further, the ALJ's failure to properly analyze the claimant's pain no doubt affected his evaluation of Dr. Leahey's opinion as well, as the

ALJ's pain-related findings were in direct contrast to Dr. Leahey's opinion of her capabilities.

Because the ALJ failed to properly analyze Dr. Leahey's opinion regarding the claimant's functional limitations, the decision of the Commissioner must be reversed and the case remanded to the ALJ for further analysis. On remand, the ALJ should re-evaluate the claimant's pain and Dr. Leahey's opinion about her functional limits. If such analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work, if any, the claimant can perform and ultimately whether she is disabled.

## Conclusion

In summary, the Court finds that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The decision of the Commissioner decision is accordingly hereby REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 31st day of March, 2014.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma